UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | Crim. No. 3:18-cr-0198 (JBA) |
| v. | |
| ANTHONY PENA | June 29, 2023 |

**RULING ON MOTION FOR CLARIFICATION**

Defendant Anthony Pena moves for clarification as to whether he is entitled to credit against his federal sentence for the time spent in state custody after his federal sentence was imposed, but before being transferred to federal custody. [Doc. # 96]. The Government's position is that whether he should be awarded any such credits by the Federal Bureau of Prisons ("BOP") is a determination that may only be made by the Middle District of Pennsylvania, where Defendant is incarcerated. However, the Government acknowledges that this Court did not specify at sentencing whether the sentence imposed was to be consecutive or concurrent to any state sentence and has agreed to communicate any clarification from this Court to the BOP for its consideration. [Doc. # 98]. Defendant's position is that state special parole is a "status" and thus cannot be made consecutive to a federal term of imprisonment, contrary to the BOP's interpretation of the Court's intent. (Def.'s Reply [Doc. # 100].) For the reasons set forth below, the Court agrees and the motion for clarification is GRANTED.

**I.     Background**

Defendant was convicted in state court of first-degree robbery in 2012, and was sentenced to a period of state incarceration followed by 3 years of probation (Presentence Report [Doc. # 72] at 8.) He violated his probation in 2013, and on May 1, 2014, he was sentenced in state court to three years imprisonment followed by five years of special parole for the probation violation. (Gov't's Response at 1-2.) It appears that he began serving his term of special parole on October 3, 2016. (Gov't's Supp'l Response [Doc. # 99] Exh. B.) After

serving 20 months on special parole, he was returned to state custody based on his firearms and narcotics arrest on June 24, 2018, (*id.*), and a special parole detainer prevented him from being released on bond. (Def.'s Reply at 2.) On August 29, 2018, a federal detainer was lodged against him for the same underlying conduct and Defendant was indicted on September 11, 2018[1]. (Def.'s Mot. at 2; Def.'s Reply at 2.) On July 17, 2019, Defendant pled guilty and was sentenced on March 11, 2020, to 71 months in prison and 3 years supervised release; the Court noted that he was on special parole, but made no statement as to whether he would receive any credit for state time served or whether his sentence was to run consecutive or concurrent with any state sentence. (Def.'s Mot. at 2.; Sentencing Tr. [Doc. # 93] at 45, 47.) Neither Defendant's counsel nor the Government raised the issue.

Defendant moved on October 7, 2020, for a modification of the May 1, 2014 state sentence. In his motion, Defendant explained that he had been continuously held at Hartford Correctional since June 24, 2018 on the original state weapons charges arising out of the same conduct as his federal case until the state charge was nolled on July 10, 2020 following his federal conviction. (Gov't's Supp'l Response Exh. A at 4-5.) However, even after the state charges were dismissed, Defendant contends that he was "not transferred into the custody of the Federal Bureau of Prisons to begin serving his Federal sentence due to the existing special parole hold in Docket number HHD-CR11-0653457-T." (Gov't's Exh. A at 5.) His movement records reflect that on July 10, 2020—the same day the state charges were nolled—there was a "discharge and hold for special parole." There were no other pending state charges at the time and the state facility had not been designated as the location at which he was to serve his federal sentence, allowing the Court to infer that consistent with Defendant's representations, from July 10, 2020 onwards, he was being held solely pending adjudication of his special parole violation triggered by the June 24, 2018 arrest. (Def.'s Reply

---

[1] Defendant was initially indicted for possession of a firearm by a felon; a Superseding Indictment was returned on July 10, 2019 adding an additional element pursuant to the Supreme Court's decision in *Rehaif v. United States.* (*Id.*)

at 2.) Defendant's motion for sentence modification was granted on December 9, 2020, and his original sentence was modified to 3 years plus 2 years special parole; the revised mittimus shows a total effective sentence of 3 years. (Gov't's Supp'l Response Exh. A at 3.)

On the same day, his state movement history reflects a "discg & hold for fed auth [sic]" and on January 27, 2021, a "discharge to federal authorities." Defendant represents that he was transferred into federal custody on December 10, 2020, the day after his special parole hold was lifted and his sentence was modified, rather than on December 9, 2020, but that otherwise the movement history record is largely correct. (Gov't's Supp'l Response Exh. B. at 2; Def.'s Reply at 2.)[2]

Defendant alleges that he was initially given his "jail time" credit and was given an "out date" of July 2023 by the BOP, but that the BOP subsequently recalculated his time and "refused to credit his jail time spent in custody;" he further explains in his reply that while he was initially going to be given credit towards the sentence for the underlying state court charge, none of the credit that accrued from the state court case was applied after the state charge was nolled on July 10, 2020. (Def.'s Mot. at 2.) The Government represents that based on its communication with a BOP attorney, counsel has learned that BOP treated the federal sentence "as consecutive to the state sentence," which is why the period between March 11, 2020 and December 10, 2020 was not credited towards Pena's federal sentence. (*See* Gov't's Response.)

## II. Discussion

"When a defendant was in primary state custody at the time his or her federal sentence was imposed, the BOP must determine whether the district court intended the

---

[2] The Government has attempted, without success to date, to obtain transcripts of the parole proceedings to determine whether the state sentence modification applied retroactively such that Pena's special parole status would have expired in late 2018, and whether the time he spent in state custody was credited to his special parole sentence. (Gov't's Supp'l Response at 1.) If the sentence modification applied retroactively, then his special parole ended in October 2018, well before he was sentenced by this Court.

federal sentence to run concurrently with, or consecutively to, the state sentence." *Thomas v. Warden FCI Ray Brook*, No. 918CV00430MADTWD, 2021 WL 4086139, at *4 (N.D.N.Y. June 28, 2021), *report and recommendation adopted*, No. 918CV00430MADTWD, 2021 WL 4084306 (N.D.N.Y. Sept. 8, 2021). While Defendant's question is whether any part of the period from March 11, 2020 (the date he federally was sentenced) to December 10, 2020 (when he was transferred to federal custody) during which time he was incarcerated in a state facility should be credited towards his federal sentence, the narrower question for this Court to answer is whether his federal sentence was intended to run concurrently or consecutively with his state sentence.[3] When the Court sentenced Defendant on March 11, 2020, the state court had not yet dismissed his state charges, and so there was a possibility of a future state sentence; however, the only definite state sentence at the time was his special parole. It is thus worth devoting a moment to discussing the particularities of Connecticut's special parole system.

"Special parole is a period of supervision that follows the completion of a fully-served term of incarceration. Conn. Gen. Stat. § 54–125e. It is imposed by the sentencing court at the time of sentencing, Conn. Gen. Stat. §§ 54–125a" and violations of special parole "are reviewed by the Connecticut Board of Pardons and Paroles." *Bowden v. United States*, No. 3:04-CR-140 (CFD), 2008 WL 4755844, at *2, n1 (D. Conn. Oct. 29, 2008). Connecticut courts have held that special parole "cannot be served while one is incarcerated" by the state, *Pentland v. Comm'r of Correction*, 200 Conn. App. 296, 306 (2020). As explained by one state court, "[a] person sentenced to a term or terms of incarceration followed by special parole cannot, consequently, simultaneously be incarcerated serving a sentence and released from incarceration to special parole." *Trimmer v. Warden*, No. CV040004529S, 2005 WL 2739908, at *5 (Conn. Super. Ct. Sept. 29, 2005). Special parole is instead considered by Connecticut

---

[3] If Defendant wishes to challenge BOP's calculation, both parties agree those requests can be made only in the Middle District of Pennsylvania, which currently has jurisdiction over Defendant as the district in which he is incarcerated.

4

courts to be a "status" rather than "as a definite sentence" separate from the period of incarceration it was issued with, *State v. Omar*, No. CR090380462, 2020 WL 3790726, at *1 (Conn. Super. Ct. June 9, 2020), *aff'd*, 209 Conn. App. 283 (2021); the status is construed as a form of "supervised release" that can be imposed only in conjunction with "a term of incarceration." *State v. Jones*, No. TTDCR130103988T, 2020 WL 1172292, at *4 (Conn. Super. Ct. Jan. 31, 2020).

From the perspective of the federal court, special parole is "custody" for purposes of habeas relief and constitutes part of a defendant's state sentence. *Gould v. Barone*, No. 3:21-CV-1237 (SVN), 2022 WL 1462227, at *1, n1, n2 (D. Conn. May 9, 2022).[4] Connecticut state parole is rarely addressed by federal courts. Although one federal court has expressed the view that special parole may be served concurrently with a federal sentence, it is unclear whether that view is consistent with the position of Connecticut state courts that special parole is fundamentally inconsistent with a period of incarceration. *See Bowden v. United States,* No. 3:04-CR-140 (CFD), 2008 WL 4755844, at *1 (D. Conn. Oct. 29, 2008) ("[a]lthough as of August 24, 2006 the federal sentence commenced because the original state sentence (and 'regular' parole) had been satisfied, [Defendant] also began his term of state 'special' parole on that date, even though he was incarcerated.") One Connecticut state court case suggests based on the way that sentencing was sequenced that even if a state sentence is intended to run consecutively with a federal sentence, the defendant is not required to complete any term of special parole before beginning his federal sentence. *See, e.g., Cornelius v. Comm'r of Correction,* 167 Conn. App. 550, 553 (2016) (defendant was sentenced to 10 years, 6 months incarceration and ten years special parole on a state case, to be served

---

[4] At least one state court has also treated a special parole hold that prevented release on bond as a form of custody that could serve as the basis of a habeas petition. *See Nunn v. Comm'r of Correction,* No. CV205000609S, 2020 WL 4596787, at *6 (Conn. Super. Ct. June 12, 2020) (addressing a habeas petition asking the court to "lift the special parole hold" so that he could be released to home confinement to "deal with his parole violation from home.")

consecutively with a period of eighteen months incarceration in his federal case; after serving his period of incarceration on the state sentence, he was transferred to federal custody to begin serving his consecutive federal sentence rather than being held in state custody or released based on his special parole). However, it does not make clear whether it considered the state parole to be concurrent to the federal sentence, or whether the state parole would be served after the federal incarceration concluded. Despite this lack of clarity, *Cornelius* allows for only two possibilities: either a federal sentence cannot run consecutively with special parole and should be considered concurrent, or state parole is to be served only after all periods of incarceration have concluded, federal or state. Under either possibility, Defendant Pena's special parole would not have been a proper basis for delaying his transfer to federal custody once his state charges were nolled.

However, Defendant was not out on special parole when he was sentenced—he was incarcerated both because of his new pending state charges and pending adjudication of his special parole violation. Once a parolee has violated special parole, they are brought before the parole board for a hearing on the violation charges, at which point the board can continue the period of special parole, modify the conditions, or revoke the special parole sentence and commit the parolee to a correctional institution for "any period not to exceed the unexpired portion of the period of special parole." Conn. Gen. Stat. § 54-125e. Defendant was never brought before the parole board for a hearing on his special parole violation, nor did he ever have his special parole extended or revoked; his sentence was modified pursuant to a "sentence modification application," filed at the court where he was sentenced. (Gov't's Supp'l Response, Exh. A at 4.)[5]

---

[5] This may have been because according to briefing filed in *McPherson v. Lamont,* "parole revocation hearings" were "not happening, at all" during the early days of the COVID-19 pandemic, meaning that detainees with special parole holds who were ineligible for release via bond reduction were in some cases held in "indefinite custody" since they could not adjudicate the underlying violation. *See McPherson v. Lamont,* No. 3:20cv534-(JBA), Pls.' Opp'n Mem. to Mot. to Dismiss [Doc. # 34] at 13.

Because the state of Connecticut appears to view special parole as being incompatible with being incarcerated unless special parole has been formally revoked, it is unclear whether the period of custody in question was part of his special parole "sentence," or whether it was a "hold" in detention pending a *potential* sentence of further incarceration or special parole. However, regardless of which it was, one thing is clear: the Court did not intend for Defendant Pena's federal sentence to run consecutively to any form of his state special parole. It does not appear that special parole is a status that allows the federal court to require that special parole be served before a federal sentence is served, because to do so would lead to an improbable result—if a defendant had a three-year incarceration, two year special parole state sentence, and a 18 month sentence of federal incarceration, ordering the special parole to be served consecutively and prior to the federal sentence commencing would result in the defendant serving three years in state custody, being released for two years on special parole, and being re-incarcerated for his 18 months of federal imprisonment. The Court did not intend for such a convoluted result, nor does anything in the record support such an inference. To the extent Defendant was no longer on special parole itself and was instead being detained on a special parole "hold" pending adjudication of a special parole violation, that detention would not be part of his state "sentence", and so the Court could not have ordered it to run either consecutively or concurrently with his federal sentence. Application Notes to § 5G1.3(c), which states that "the Commission recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation" of probation or parole, does not apply because there was no "sentence imposed" for the revocation of parole.

### III.   Conclusion

The Court clarifies that to the extent that the BOP has construed the Court's intention to be that the federal sentence should run consecutively to his special parole, that presumption is incorrect. The Court declined to designate the federal sentence as either

consecutive or concurrent based on the lack of clarity around whether he was indeed serving a state sentence, or would be serving one in the future, leaving to the state's discretion how the adjudication of his special parole violation would be treated.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 29th day of June, 2023.